Dear Representative Ellington:
You have requested an opinion of this office regarding whether Hospital Service District No. 2 of the Parish of Beauregard, State of Louisiana ("District"), owner of Beauregard Memorial Hospital ("Beauregard"), may enter into a cooperative endeavor agreement ("Agreement") with National Healthcare of Leesville, Inc. d/b/a Byrd Regional Hospital ("Byrd") and Building Healthy Communities, Inc. ("BHC"), a Louisiana nonprofit, non-stock corporation which has been designated as a 501(c)(3) public charity by the Internal Revenue Service, whose sole member is the Rural Hospital Coalition, Inc. (the "Coalition"). The purpose of this Agreement would be for the District and Byrd to provide financial assistance to Louisiana's rural hospitals through a contribution of funding received under Act 883 of the 2010 Regular Session of the Louisiana Legislature to BHC, to establish a grant program that will enhance the ability of all rural hospitals in Louisiana to receive adequate reimbursement for the essential health care services they provide to the citizens in rural communities who are often low income and/or indigent, and to support the Coalition's mission to assist and provide benefits to rural hospitals, including Byrd and Beauregard, as more specifically described in the Agreement.
In 1997, in recognition of the enormous challenges rural communities faced as their hospitals closed due to changes in reimbursement and managed care penetration, the Louisiana Legislature enacted the Rural Hospital Preservation Act ("RHPA"), La.R.S. 40:1300.141, et seq. This legislation acknowledges Louisiana's rural hospitals are "a key component of the state's healthcare safety *Page 2 
net which is essential to ensuring access to healthcare for Louisiana's rural residents." La.R.S. 40:1300.141 (A)(7).
In an effort to address the critical financial shortages rural hospitals are facing due, in part, to the rising population of low-income and indigent patients, decreases in managed care reimbursement, the increasing difficulty and cost of recruiting physicians to staff rural hospitals, and reductions in Medicaid disproportionate share ("DSH") hospital reimbursement (collectively referred to as "Financial Challenges"), the Louisiana Legislature passed Act 883 during the 2010 Regular Session, thereby adding La.R.S. 40:1300.144(A)(4)(a) to the RHPA. The amendment directs the Louisiana Department of Health and Hospitals ("DHH") "to develop and implement, by emergency rule, a payment methodology which optimizes Medicaid inpatient and outpatient payments to rural hospitals." This latest amendment furthers the existing directive of the RHPA set forth in La.R.S. 40:1300.133(A)(2)(a) which requires DHH to promulgate rules to "[m]aximize funding for services rendered by rural hospitals to the extent allowed by federal law and in amounts that may be appropriated by the legislature relative to the use of Medicaid disproportionate share reimbursement and Medicaid reimbursement."
In order to comply with Act 883, DHH promulgated State Plan Amendments TN 10-51 and 10-54 applicable to inpatient and outpatient hospital services, respectively, provided by small rural hospitals. The Center for Medicare and Medicaid Services, the federal agency with oversight responsibility for the state Medicaid program, approved both state plan amendments. These state plan amendments authorize reimbursement to certain qualifying small rural hospitals for inpatient and outpatient services up to the Medicare Upper Payment Limit ("UPL"). Beauregard and Byrd were the two rural hospitals chosen to receive UPL reimbursement under the state plan amendments. The amount of UPL reimbursement that Beauregard will receive will be of substantial assistance in addressing its Financial Challenges and will also provide crucial financial support to other Louisiana hospitals facing losses resulting from their own Financial Challenges As such, the two hospitals would like to contribute funding to BHC, which would then make grants to all Louisiana rural hospitals, thereby preserving their ability to provide access to health care for the needy and underserved rural population of Louisiana.
Under the terms of the proposed Agreement, Beauregard and Byrd voluntarily elect to assist other rural hospitals with grant funding from funds each receives from the State of Louisiana Medicaid Program to ensure adequate and essential healthcare services are accessible and available for rural citizens across the State. Upon receiving the UPL payments, the two hospitals would retain the amount of money necessary to meet their Financial Challenges and would contribute the balance of the funds received for implementation of the grant program contemplated under the Agreement. BHC would then administer grants to rural hospitals across Louisiana. Byrd and Beauregard acknowledged that, *Page 3 
"as cause and consideration for this Agreement that the continuing efforts of the Coalition on behalf of Rural Hospitals have resulted in any UPL funding that is the subject of this Agreement and Byrd and Beauregard desire to support the ongoing and future efforts of the Coalition to continue to promote such funding initiatives." This Agreement "enhance[s] the ability of all Rural Hospitals in Louisiana to receive adequate reimbursement for the medically necessary essential health care services they provide to low income, indigent, and/or medically underserved patients in rural communities."
In light of the foregoing, you have asked whether the District, which owns Beauregard Memorial Hospital and therefore will receive Beauregard's UPL payment, may contribute the balance of the payment it receives, after making itself whole as described in the proposed Agreement, so that the BHC can administer grants to other rural hospitals in Louisiana.
Cooperative endeavor agreements, such as the one proposed here, are authorized by La.Const. art. VII, Sec. 14(C), which provides:
 For a public purpose, the state and its political subdivisions or political corporation may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
Any time public funds are spent, whether pursuant to a cooperative endeavor agreement or otherwise, the public entity has an obligation to ensure that the expenditure complies with the terms of La.Const. art. VII, Sec. 14(A), which prohibits public funds or property being gratuitously alienated. In order to ensure that the agreement does not violate La.Const. art. VII, Sec. 14(A), our office has consistently opined that a public entity spending the funds must have the legal authority to so do and must be able to show: (i) a public purpose for the expenditure or transfer that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) that the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds. See Board of Directors of theIndustrial Development Board of the City of Gonzales, Louisiana,Inc. v. All Taxpayers, Property Owners, Citizens of the City ofGonzales, et al., 2005-2298 (La. 9/6/06), 938 So.2d 11, 20 (the "Cabela's" case).
Thus, the first prong of the Cabela's analysis we must consider is whether the District has the authority to pay to BHC the excess money it has from the payments it receives. Hospital service districts are authorized by La.R.S. 46:1077 to enter into cooperative endeavor agreements to promote any hospital health service. The statute provides: *Page 4 
 In addition to the powers and duties otherwise provided and notwithstanding any other law to the contrary, the board of commissioners of a hospital service district and any corporation or health facility owned or operated by such district or commission may contract with or engage in a joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell any hospital health service. A hospital service district commission contracting with or engaging in a joint venture with any person, corporation, partnership, or group of persons to offer, provide, promote, establish, or sell a hospital health service shall be presumed to be engaged in a cooperative endeavor as provided by Article VII, Section 14(C) of the Constitution of Louisiana. The commission shall be further presumed to have entered into such contract for the purpose of obtaining a tangible benefit and for a public purpose, and such contract shall not be presumed to be a donation in contravention of Article VII, Section 14(A) of the Constitution of Louisiana.
Because participation in the proposed Agreement is intended to ensure that Beauregard receives funding pursuant to the approved state plan amendments, it is our opinion that entering into this Agreement promotes a "hospital health service," which the District is authorized to do by the above cited statute. We also note that the proposed Agreement furthers the purposes hospital service districts were created to undertake. See La. R.S 46:1052.
After concluding that the District has the legal authority to enter into the proposed Agreement, we turn to the question of whether the expenditure of the remaining funds to BHC is gratuitous on its face and whether the District has a reasonable expectation of receiving at least equivalent value in exchange for the funds it will contribute. Our review of the Agreement that the District wishes to execute, Act 883 and the state plan amendments confirms that but for the District's participation in the contemplated transaction, Beauregard Memorial Hospital, as well as all other rural hospitals, would not receive the funding required to meet the reductions experienced as a result of their Financial Challenges. The careful design and implementation of this initiative is the only available method to ensure that the District receives the essential payments it requires. Of additional benefit to the District is the continued efforts of the Coalition, as outlined in the proposed Agreement, to enact legislation and obtain funding that is essential to insure the viability of rural hospitals including the District and that neither the District nor any other rural hospital would be able to obtain on their own. Therefore, we conclude that the District will receive a value equivalent to the funds it will contribute and that the proposed Agreement does not violate La.Const. art. VII, Sec. 14(A).
Although it is the opinion of this office that the proposed Agreement passes the Cabela's test and is therefore not a violation of La.Const. art. VII, Sec. 14(A), we note that, alternatively, the Agreement is permitted under La.Const. Art. VII, Sec. 14(B). *Page 5 
This constitutional provision is an exception to the general prohibition against the donation of public funds found in La.Const. Art. VII, Sec. 14(A) and allows "the use of public funds for programs of social welfare for the aid and support of the needy." This office has consistently opined that the exception in paragraph (B)(1) is operative as long as those assisted through such a program are screened pursuant to objective criteria to ensure they are, in fact, needy. La. Atty. Gen. Op. Nos. 05-0128, 03-0334, 00-14, 98-432. A person's income is an example of objective criteria that should be used to determine who is needy. La. Atty. Gen. Op. No. 04-0088. There is no question that the Medicaid program is an established program that exists to assist needy persons. Further, the Louisiana Legislature has acknowledged that Louisiana's rural hospitals "provide most of the health care services required by a substantial number of low income rural residents living in the state." La.R.S. 40:1300.142(A)(1). One of the main goals accomplished by the proposed Agreement is to "enhance the ability of all rural hospitals in Louisiana to receive adequate reimbursement for the essential health care services they provide to the citizens in rural communities who are often low income and/or indigent." Agreement, p. 1 para. 7. Thus, it is our opinion that the District may contribute funding as contemplated in the proposed Agreement because doing so allows the District, as well as all rural hospitals in the State of Louisiana, to continue to receive funds for treating and to continue to treat the poor and needy.
Based on the foregoing, it is the opinion of this office that the District has the authority to enter into the proposed Agreement and that the contribution of the funds that are the subject of the Agreement by the District to BHC as contemplated in the Agreement and in Act 883 does not violate La.Const. art. VII, Sec. 14.
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL Attorney General
 By: __________________________ Lindsey K. Hunter Assistant Attorney General
 JDC/LKH/chb